# Exhibit 1

OFFICE LEASE AGREEMENT

BY AND BETWEEN

B.H. MELBOURNE DELAWARE, LLC,

A DELAWARE LIMITED LIABILITY COMPANY

AS LANDLORD

AND

WINGSPAN PORTFOLIO ADVISORS, LLC,

A TEXAS LIMITED LIABILITY COMPANY,

AS TENANT

DATED TO BE EFFECTIVE AS OF FEBRUARY 25, 2013

OFFICE LEASE AGREEMENT

THIS OFFICE LEASE AGREEMENT (this "Lease") is entered into on February 6, 2013 to be effective as of as of February 25, 2013 (subject to Section 3(b), the "Effective Date") by and between B.H. MELBOURNE DELAWARE, LLC, a Delaware limited liability company ("Landlord"), and WINGSPAN PORTFOLIO ADVISORS, LLC, a Texas limited liability company ("Tenant").

Landlord and Tenant agree:

1.  BASIC LEASE INFORMATION AND EXHIBITS. The following terms as used herein shall have the meanings provided in this Section 1, unless otherwise specifically modified by provisions of this Lease:

| | | |
|---|---|---|
| (a) | Landlord's Address for Notice: | B.H. Melbourne Delaware, LLC, 1111 Santa Monica Boulevard, Suite 600 Los Angeles, California 90025 Attention: Arsalan Gozini |
| (b) | Tenant's Address for Notice: | Wingspan Portfolio Advisors, LLC 4100 Midway Rd., Ste. 1110 Carrollton, TX 75007 Attn: Matt Cassell E-mail: matthew.Cassell@wingspanadvisors.com |
| (c) | Premises: | The real property consisting of approximately 10.88 acres and described on **Exhibit A** attached hereto (the "Real Property"), together with the Building (defined below), any and all parking located thereon, and any other improvements located thereon as described on **Exhibit B** attached hereto. |
| (d) | Building: | The building located at 3900 West Babcock Street, Melbourne, Florida 32901, which contains approximately 107,419 rentable square feet of area and is situated on the Real Property. |
| (e) | Term: | Forty eight (48) months, commencing on the Commencement Date and terminating at midnight on the day before the fourth (4th) anniversary of the Commencement Date (the "Termination Date"). The phrase "Term of this Lease" or "the Term hereof" as used in this Lease, or words of similar import, shall refer to |

1

|     |                      |                                                                                                                                  |
| --- | -------------------- | -------------------------------------------------------------------------------------------------------------------------------- |
|     |                      | the initial Term of this Lease together with any additional Extension Term (as defined below) for which an option has been validly exercised. |
| (f) | Commencement Date:   | On or before March 1, 2013. See Section 3.                                                                                       |
| (g) | Basic Rent:          |                                                                                                                                  |

| Months | Basic Rent Per Rentable Square Foot Per Annum |
| --- | --- |
| Initial Term | |
| 1 through 12 | $6.00 |
| 13 through 24 | $7.00 |
| 25 through 36 | $7.50 |
| 37 through 48 | $8.00 |
| | |
| Extension Term | |
| 1 through 24 | $8.50 |

(h) Use: General office purposes, including operation of a loan processing center, or any other lawful commercial purpose.

(i) Intentionally Omitted

(j) Intentionally Omitted

(k) Exhibits to Lease:
**Exhibit A** – Legal Description of Real Property
**Exhibit B** – Site Plan of Premises
**Exhibit C** - Commencement Date Memorandum and Confirmation of Lease Terms
**Exhibit D** – Tenant Estoppel Certificate
**Exhibit E** – Subordination, Non-disturbance and Attornment Agreement

2. PREMISES

(a) Landlord hereby leases to Tenant, and Tenant hereby leases from Landlord, upon the terms and conditions herein set forth, the Premises described in Section 1 hereof and Exhibit A attached hereto. Except as expressly provided in this Lease, Tenant accepts the Premises in their current "as-is" condition and acknowledges that Landlord has made no representations or warranties with respect thereto.

(b) Landlord represents that the rentable area of the Building as set forth in Section 1 has been measured consistent with the American National Standard Institute Publication ANSI 265.1-1996 (for single purpose buildings). Within thirty (30) days after the Commencement Date, Tenant may elect to have Tenant's architect remeasure the Building; and,

2

if Tenant disputes the results of Landlord's measurement of the Building, then Tenant shall notify Landlord of such objection within such thirty (30) day period, or Landlord's measurement set forth in Section 1 shall be deemed correct. Should Landlord and Tenant not agree with respect to the results of the measurement conducted pursuant to this Section they shall jointly appoint an independent firm or person who is experienced in making such measurements whose determination with respect to which measurement is correct shall be final and binding upon both parties. Landlord and Tenant shall share equally in the fees of such firm. Upon resolution of any such dispute, all terms of this Lease dependent upon such measurement (e.g., Basic Rent) shall be amended to reflect the actual measurement of the Building, retroactive to the Commencement Date, and any underpayment (or overpayment, as the case may be) of Rent or resulting from any other term of this Lease subject to adjustment pursuant to this Section shall be either payable to Landlord by Tenant as Additional Rent or credited by Landlord against rent next due from Tenant, as the case may be.

(c) Landlord hereby grants to Tenant the right to use the loading dock on the north side of the Building as shown on **Exhibit B** attached hereto, which loading dock is on property adjacent to the Premises. Landlord represents and warrants to Tenant that Landlord has the right to grant Tenant the use of such loading dock for the duration of the Term of this Lease.

3. COMMENCEMENT AND EXPIRATION DATES

(a) Term. The term of this Lease shall commence upon the Commencement Date and terminate on the Termination Date. Within thirty (30) days of determining the Commencement Date, Landlord and Tenant shall acknowledge in writing the Commencement Date by executing the Commencement Date Memorandum and Confirmation of Lease Terms attached as **Exhibit C**.

(b) Conditions Precedent. As a condition precedent to the effectiveness of this Lease, this Lease will not be deemed binding (and the Effective Date shall not occur) until (i) Landlord regains legal possession of the Premises and (ii) the closing under the Asset Purchase Agreement between Tenant and JPMC (as defined in Section 15) occurs, which closing is expected to occur on or about February 25, 2013. Upon the satisfaction on the conditions precedent set forth in this Section 3(b), the Effective Date shall be deemed to occur automatically and without any further actions by Landlord and Tenant. If the conditions precedent have not been satisfied and the Effective Date has not occurred by March 15, 2013, this Lease shall be null and void and neither Tenant nor Landlord shall have any further rights or obligations hereunder.

(c) Intentionally Omitted.

(d) Tenant's Option to Extend. Tenant shall have the right to extend the Term of this Lease for one (1) period of two (2) years ("Extension Term"). Tenant may exercise its extension option by delivering to Landlord notice of Tenant's intention to exercise the option no later than the date six (6) months prior to the expiration of the Term of this Lease. The Extension Term shall be on all of the terms and conditions contained in this Lease, except that Basic Rent shall be adjusted as set forth in Section 1.

3

4.  RENT. Tenant shall pay Landlord as Basic Rent the amount stated in Section 1 in lawful money of the United States of America for each month of the Term payable in advance on the first day of each month commencing with the Commencement Date. Basic Rent shall be based upon the rentable area of the Building as provided in Section 2(b); there shall be no additional Basic Rent charged for additional rentable area created by Alterations (as defined in Section 16(b) below) or for Tenant's use of the remainder of the Premises, including without limitation the parking areas or the garden area adjacent to the Building. Basic Rent for any period during the term hereof which is for less than one month shall be prorated based on the number of days in such month. Basic Rent shall be payable to Landlord at the address stated in Section 1 or to such other persons or at such other places as Landlord may designate in writing. All amounts due Landlord shall be paid by Tenant without deduction or offset except as expressly provided elsewhere in this Lease. Basic Rent and any other amounts payable by Tenant to Landlord hereunder are sometimes hereinafter referred to as "Rent."

5.  INSURANCE, OPERATING COSTS AND TAXES.

(a)  Tenant's Obligations. In addition to the Basic Rent, Tenant shall pay all costs of owning, operating and maintaining the Premises except those portions of the Premises which Landlord is obligated to maintain as set forth in Section 10(b) of the Lease. Tenant's obligations include payment of all Taxes and Operating Costs, as defined below:

(i)  "Taxes" as used herein shall mean all federal, state, county, or local governmental, special district, improvement district, municipal or other political subdivision taxes, fees, levies, assessments, charges or other impositions of every kind and nature, whether foreseen or unforeseen, general, special, ordinary or extraordinary, respecting the Premises, including without limitation, real estate and other ad valorem taxes, general and special assessments, interest on any special assessments paid in installments, transit taxes, water and sewer rents, excise taxes levied with respect to Tenant's business at the Premises, taxes based upon the receipt of rent including, without limitation, gross receipts taxes applicable to the receipt of rent, personal property taxes imposed upon the fixtures, machinery, equipment, apparatus, systems and equipment, appurtenances, furniture and other personal property used in connection with the Premises. If and to the extent that Taxes include assessments or similar charges which may be paid in installments over a term of multiple years, only the annual installment of such assessment or other charge, with interest (as applicable), shall be included in Taxes in any year. Notwithstanding the foregoing, Taxes shall not include excess profits taxes, franchise taxes, gift taxes, capital stock taxes, inheritance and succession taxes, estate taxes, federal and state income taxes, and other taxes to the extent applicable to Landlord's general or net income (as opposed to rents, receipts or income attributable to operations at the Building). If the method of taxation of real estate prevailing at the time of execution hereof shall be, or has been altered, so as to cause the whole or any part of the taxes now, hereafter or theretofor levied, assessed or imposed on real estate to be levied, assessed or imposed on Landlord, wholly or partially, as a capital levy or otherwise, or on or measured by the rents received therefrom, then such new or altered taxes attributable to the Premises shall be included within the term "Taxes", except that the same shall not include any enhancement of said tax attributable to other income of Landlord. Tenant shall pay all taxes directly to the taxing authority, and Landlord shall cause all tax bills and all related correspondence to be sent directly to Tenant. Tenant shall have the right to contest, at its expense and in such manner as it elects, any Taxes.

4

(ii) "Operating Costs" as used herein shall mean costs, expenses and disbursements, any portion of which occurs during the Term, in connection with the maintenance, operation, administration and repair of the Premises and repair or replacement of any Building Systems (as defined in Section 10(b)), including the following, but subject to the exclusions from Operating Costs listed in Section 5(b) below; provided that the first $125,000 (in the aggregate) of costs relating to the replacement of Building Systems that may be capitalized under generally accepted accounting principles shall be paid by Tenant; provided further that any cost in excess of $125,000 (in the aggregate) relating to the replacement of Building Systems that may be capitalized under generally accepted accounting principles shall be paid by Landlord and amortized on a straight-line basis over the useful life of such replacement, and only the annual amortized portion during the Term of this Lease ("Amortized Costs") shall be included in Operating Costs:

1) utilities including but not limited to gas, steam, oil or other fuel, water, sewer, lighting, heating, ventilating and air conditioning ("HVAC");

2) permits, licenses and certificates necessary to operate and manage the Building;

3) insurance applicable to the Building and the Premises as required pursuant to the terms of this Lease;

4) supplies, materials, tools, and equipment used in the operation, repair, maintenance and security, floor care and cleaning, landscaping, and other services for the Premises;

5) payments under any easement, operating agreement, declaration, restrictive covenant, or instrument pertaining to the sharing of costs in any development of which the Building is a part that are listed in Schedule 1;

6) alarm monitoring and security service;

7) operation, maintenance, repair, installation, inspection, testing, painting, decorating and cleaning of the Premises;

8) any property management or similar services procured by Tenant, in its discretion; and

9) the costs of repair and maintenance of Building Systems, the first $125,000 of the cost of replacement of any Building Systems, and any Amortized Costs of the costs of replacement of Building Systems.

(b) Landlord's Obligations. Landlord shall have sole responsibility for the following items, which shall not be included in Operating Costs:

(i) costs occasioned by the act, omission or violation of law by Landlord or its agents, employees or contractors;

5

(ii) costs occasioned by casualties of a type that would be covered by an all-risk property insurance policy (including earthquake and flood) or by other insurance carried by Landlord or occasioned by the exercise of the power of eminent domain;

(iii) interest, charges and fees incurred on debt, payment on mortgages and rent under ground leases, and costs expended in connection with any sale, hypothecation, financing, refinancing, or ground lease of the Premises or of Landlord's interest therein;

(iv) any depreciation for any of the real or personal property associated with the Premises, including any leasehold improvements;

(v) any reserves for any purpose, any bad debt, rent loss, or reserves for bad debt or rent loss;

(vi) advertising costs, promotional costs, costs related to artwork, market study fees and costs of signs in or at the Building identifying the owner of the Building;

(vii) insurance deductibles and co-insurance payments and increases in insurance costs caused by the activities of any other occupant of the Building; and

(viii) any and all costs arising from the presence or removal of hazardous materials or substances in or about the Premises, including, without limitation, hazardous substances in the ground water or soil, and any judgments, fines, penalties, or other costs incurred in connection with any hazardous substance exposure or release, except to the extent that the foregoing is caused by the illegal storage, use or disposal of the hazardous substance in question by Tenant; and

(ix) costs of complying with Landlord's obligations under Section 10(b), other than to the extent of Tenant's responsibility for the first $125,000 of the cost of replacement of any Building Systems and any Amortized Costs.

6. PAYMENT. Tenant shall make appropriate arrangements with all third party providers to be billed directly for all Operating Costs and Tenant shall pay Operating Costs directly to the applicable provider thereof, other than any Amortized Costs included within Operating Costs, which costs shall be invoiced to Tenant within 45 days following the end of each calendar year (or expiration of this Lease) and payable by Tenant within 45 days following Tenant's receipt thereof.

7. USES. The Premises are to be used only for the uses set forth in Section 1 hereof and for no other business or purpose; however, Landlord shall not unreasonably withhold its consent to a change of use.

8. COMPLIANCE WITH LAW. Tenant shall, at Tenant's expense, comply promptly with all applicable statutes, ordinances, rules, regulations, orders and requirements in effect during the term hereof, regulating the use, occupancy or improvement of the Premises by Tenant, except that Landlord shall, at its sole cost, at all times cause Structural Elements and Building Systems (each as defined in Section 10(b)) to comply with all applicable statutes, ordinances, rules, regulations, orders and requirements in effect and binding upon Tenant or

6

Landlord during the term hereof, including without limitation, the Americans with Disabilities Act ("ADA").

9.  DAMAGE OR DESTRUCTION.

(a) Tenant shall promptly advise Landlord if the Premises are damaged by fire or other casualty. In the event any portion of the Premises is damaged by fire or any other cause rendering the Premises totally or partially inaccessible or unusable and the Premises may be restored to a complete architectural unit of the same value, condition and character that existed immediately prior to such casualty, then Landlord shall, at Landlord's expense, repair such damage as soon as reasonably possible and this Lease shall continue in full force and effect, unless terminated pursuant to Sections 9(b) or 9(c) below. If then-existing laws or ordinances do not permit such restoration, Landlord shall have no obligation to commence or complete such restoration; provided, however, that in such event Tenant may elect to terminate the Lease immediately upon written notice to Landlord.

(b) If any repair or restoration to the Premises is reasonably estimated to require more than one hundred twenty (120) days from the occurrence of such damage to complete, Tenant may elect to terminate the Lease immediately upon written notice to Landlord.

(c) If any destruction to the Premises occurs during the last twelve (12) months of the Lease Term, either Landlord or Tenant may terminate this Lease by giving notice to the other party not more than 30 days after such destruction, in which case (i) Landlord shall have no obligation to restore the Premises, (ii) Landlord may retain all insurance proceeds relating to such destruction, and (iii) this Lease shall terminate as of 30 days after such notice of termination.

(d) Landlord shall not be required and will not carry insurance of any kind on any improvements paid for by Tenant or on Tenant's furniture, furnishings, fixtures, equipment, appurtenances or other personal property of Tenant under this Lease and Landlord shall not be obligated to repair any damage thereto or replace the same.

(e) Rent shall abate to the extent that the Premises are unusable by Tenant.

(f) If Landlord is required to repair and restore the Premises as provided for in this Section and Landlord should fail to thereafter pursue said repair and restoration work with reasonable diligence to completion, Tenant may (i) repair and restore the Premises on behalf of Landlord, and deduct the cost thereof from the Rent next owing to Landlord until such sums have been offset against Rent in full, or (ii) immediately terminate this Lease by giving notice to the Landlord.

10. REPAIRS AND MAINTENANCE.

(a) Landlord Representations. Landlord represents to Tenant that, as of the date of this Lease, (i) each of (A) the roof, walls, floors, ceilings, windows, slab, foundation, driveways, parking areas, sidewalks and structure of the Building ("Structural Elements") and (B) all plumbing, wiring, electrical, HVAC and other Building systems ("Building Systems"), are in good condition and comply with all current laws, codes, and ordinances, including the

7

ADA; (ii) the Premises and the Building are free of the presence of any Hazardous Materials (as defined in Section 20), and (iii) the Premises complies with present zoning that allows Tenant to operate the Premises for general office purposes. Landlord represents, based upon a professional inspection of the Premises and the Building that the Premises and the Building contain no asbestos containing materials or mold.

(b) Landlord Obligations. Landlord shall (i) keep and maintain in good repair and working order and make repairs to and perform maintenance upon and replace as needed, the Structural Elements of the Building and (ii) subject to Tenant's payment obligations herein, replace any Building Systems, as needed.

(c) Tenant's Obligations. Tenant, at its sole cost and expense, shall perform all maintenance and repairs to the Premises (other than for those portions of the Premises described in Section 10(b) above), and shall keep the Premises (other than for those portions of the Premises described in Section 10(b) above) in good condition and repair, reasonable wear and tear excepted. All repairs and replacements shall be in accordance with all laws.

11. SERVICES AND UTILITIES. Tenant shall contract directly with the providers of all utilities and Landlord shall have no responsibility therefor. If there is an interruption of service caused by the negligence or willful misconduct of Landlord, which continues for 24 hours or more and materially interferes with Tenant's use of the Premises, Rent shall thereafter abate to the extent the Premises are unusable for their normal purposes. If such interruption or curtailment continues for five (5) days or more, then Tenant shall have the right to terminate this Lease. Nothing contained herein precludes Tenant from seeking recovery of any and all damages suffered and losses incurred (including but not limited to loss of business) due to an interruption of utilities, if such interruption was caused by the intentional or negligent act or omission of Landlord, its agents, employees, or contractors.

12. ACCESS. Tenant and its employees and agents shall have access to the Building and the Premises on a seven (7) day per week, twenty-four (24) hour per day basis.

13. TENANT DEFAULT.

(a) Default. The occurrence of any one or more of the following events (a "Default") shall constitute a material default and breach of this Lease by Tenant:

(i) the failure by Tenant to make any payment of Basic Rent or any other payment required to be made by Tenant hereunder (except to the extent an offset is expressly permitted hereunder), as and when due and if the failure continues for a period of five (5) days after date such payment is due to Landlord; and

(ii) the failure by Tenant to observe or perform any of the other covenants, conditions or provisions of this Lease, where such failure shall continue for a period of thirty (30) days after written notice from Landlord specifying in reasonable detail such failure; provided, however, if more than thirty (30) days are reasonably required for its cure then Tenant shall not be deemed to be in default if Tenant commences such cure within said 30-day period and thereafter diligently prosecutes such cure to completion.

8

(b) <u>Remedies</u>. Upon occurrence of an Event of Default under this Lease, Landlord may exercise all of its remedies as may be permitted by law, and including, without limitation, terminating this Lease, re-entering the Premises and removing all persons and property therefrom, which property may be stored by Landlord at a warehouse or elsewhere at the risk, expense and for the account of Tenant.

(c) <u>Indemnity</u>. Nothing in this Section shall be deemed to affect Landlord's right to indemnification for liability or liabilities arising prior to the termination of this Lease for personal injuries or property damage under the indemnification clause or clauses contained in this Lease. Notwithstanding anything to the contrary set forth herein, Landlord's re-entry to perform acts of maintenance or preservation of or in connection with efforts to relet the Premises or any portion thereof, or the appointment of a receiver upon Landlord's initiative to protect Landlord's interest under this Lease shall not terminate Tenant's right to possession of the Premises or any portion thereof and, until Landlord does elect to terminate this Lease, this Lease shall continue in full force and effect, and Landlord may enforce all of Landlord's rights and remedies hereunder. Accordingly, if Landlord does not elect to terminate this Lease on account of any default by Tenant, Landlord may, from time to time, without terminating this Lease, enforce all of its rights and remedies under this Lease, including the right to recover all rent as it becomes due.

14. <u>LANDLORD DEFAULT</u>. Landlord shall not be in default unless Landlord fails to perform obligations required of Landlord within a reasonable time, but in no event later than ten (10) days after written notice by Tenant to Landlord; provided, however, that if the nature of Landlord's obligation is such that more than ten (10) days are required for performance then Landlord shall not be in default if Landlord commences performance within such ten-day period and thereafter diligently prosecutes the same to completion within no more than thirty (30) days. If Landlord fails to cure any such default within the allotted time, Tenant, at its option, with or without further notice or demand of any kind to Landlord or any other person, shall have the right to any one or more of the following described remedies in addition to all other rights and remedies provided at law or in equity or elsewhere herein: (i) to remedy such default or breach and deduct the costs thereof (including but not limited to attorneys' fees) from the installments of Rent next falling due; (ii) to pursue the remedy of specific performance; (iii) to seek money damages for loss arising from Landlord's failure to discharge its obligations under this Lease or offset such damages against Basic Rent next falling due; and (iv) to terminate this Lease. Nothing herein contained shall relieve Landlord from its duty to effect the repair, replacement, correction or maintenance required to restore the affected services or utilities, or to perform any other obligations to the standard prescribed in this Lease, nor shall this Section be construed to obligate Tenant to undertake any such work. Notwithstanding the foregoing 10-day grace period, Tenant may cure any default without notice where the failure promptly to cure such default would, in the reasonable opinion of Tenant, create or allow to persist an emergency condition or materially and adversely affect the operation of Tenant's business on the Premises.

15. <u>ASSIGNMENT AND SUBLETTING</u>. Tenant shall not assign, mortgage, encumber or otherwise transfer this Lease or sublet the whole or any part of the Premises without in each case first obtaining Landlord's prior written consent, which Landlord shall not unreasonably withhold, condition or delay. Landlord shall notify Tenant in writing of its approval or disapproval within fifteen (15) days after receipt of notice of the proposed

9

assignment or subletting (the "Assignment Notice") from Tenant. If Landlord does not respond in writing within fifteen (15) days, Landlord shall be deemed to approve such assignment or sublease. No assignment, subletting or other transfer shall relieve Tenant of any liability under this Lease. Consent to any such assignment, subletting or transfer shall not operate as a waiver of the necessity for consent to any subsequent assignment, subletting or transfer. Notwithstanding the foregoing, Tenant is not obligated to obtain Landlord's prior written consent to assign this Lease or to sublease the Premises to an entity which is an Affiliate (as hereafter defined) of Tenant. The term "Affiliate" as used herein shall be any person or entity (1) that directly or indirectly through one or more intermediaries controls, or is controlled by, or is under common control with, Tenant, (2) owns twenty-five percent (25%) or more of the equity interest of which is held beneficially or of record by Tenant, as the context may require, or (3) that is or becomes a parent, successor or affiliate of Tenant, or is a successor of Tenant by reason of merger, consolidation, public offering, reorganization, dissolution, or sale of stock, membership or partnership interests or assets. Landlord hereby consents to the sublease or license of the portion of the Premises from which JPMorgan Chase Bank National Association ("JPMC"), the prior tenant of the is Premises, conducted banking operations to JPMC pending JPMC's receipt of all regulatory approvals to discontinue such banking operations.

16.     ALTERATIONS AND ADDITIONS.

(a)     Initial Tenant Improvements. Tenant shall provide to Landlord its plans for the Tenant Improvements in form suitable for permit application (collectively, the "Working Drawings"). Working Drawings, and all material changes thereto, shall be subject to Landlord's written approval, which shall not be unreasonably conditioned or withheld and shall be deemed given if not denied in writing within ten (10) business days after Tenant submits them. If Landlord denies its approval, it shall specify the reasons for doing so in detail. Landlord's review and consideration of the Working Drawings, and any changes thereto, shall be limited to matters affecting the structure of the Building and mechanical, electrical and other Building systems.

(b)     Improvements During the Term. Tenant shall not make any structural alterations, improvements, additions, or utility installations in or about the Premises (collectively, "Alterations") without first obtaining the written consent of Landlord, which consent shall not be unreasonably withheld, conditioned or delayed. However, Landlord's consent shall not be required for any Alteration that satisfies all of the following criteria: (1) complies with all Laws; (2) is not visible from the exterior of the Premises or Building; and (3) will not materially affect the structure of the Building. If Landlord fails to respond in writing within thirty (30) days of Tenant's request for approval of an Alteration, Landlord shall be deemed to have approved the Alteration.

(c)     End of Term. Any Alterations not removed by Tenant shall become the property of Landlord and remain upon and be surrendered with the Premises at the expiration of the Term.

17.     CONDEMNATION. Either party may terminate this Lease if the whole or any material part of the Premises shall be taken or condemned for any public or quasi-public use under any law, by eminent domain or private purchase in lieu thereof (a "Taking"). Tenant shall also have the right to terminate this Lease if there is a Taking of any portion of the Building or

10

parking facilities which would materially affect Tenant's use or enjoyment of the Premises. In order to exercise its right to terminate the Lease, Landlord or Tenant, as the case may be, must provide written notice of termination to the other within thirty (30) days after the terminating party first receives notice of the Taking. Any such termination shall be effective as of the date the physical taking of the Premises or the portion of the Building occurs. If this Lease is not terminated, Rent for any portion of the Premises taken or condemned shall be abated during the unexpired Term of this Lease effective when the physical taking of the portion of the Premises occurs. All compensation awarded for a Taking, or sale proceeds, shall be shared by Landlord and Tenant in accordance with their respective interests in the Premises.

18. INDEMNIFICATION.

(a) Tenant's Indemnity. Tenant shall indemnify, defend and hold Landlord harmless from and against all loss, cost and expense, including attorneys' fees, arising from any injury or damage to any person or property, occurring in or about the Building or Premises as a result of any negligent act or omission or willful misconduct of Tenant, or its contractors, licensees, agents, employees, guests, or visitors or arising from any breach or default under this Lease by Tenant. The foregoing provisions shall not be construed to make Tenant responsible for loss, damage, liability or expense resulting from injuries to third parties caused by the negligence or willful misconduct of Landlord, or its officers, contractors, licensees, agents, employees or invitees.

(b) Landlord's Indemnity. Landlord shall indemnify, defend and hold Tenant harmless from and against all loss, cost and expense, including attorneys' fees, arising from any injury or damage to any person or property, occurring in or about the Building or Premises as a result of any negligent act, omission or willful misconduct of Landlord, or its officers, contractors, licensees, agents, employees, guests, or visitors or arising from any breach or default under this Lease by Landlord. The foregoing provisions shall not be construed to make Landlord responsible for loss, damage, liability or expense resulting from injuries to third parties caused by the negligence or willful misconduct of Tenant, or its officers, contractors, licensees, agents, employees or invitees.

19. INSURANCE.

(a) Landlord's Insurance. During the term of this Lease, Landlord shall maintain at Tenant's expense commercial property insurance which shall (1) cover damage to Landlord's property, including improvements and betterments, from perils covered by the causes-of-loss special form (ISO form CP 1030), and include ordinance of law coverage (and coverage against acts of terrorism to the extent such coverage is reasonably available at commercially reasonable rates) and (2) be written for full replacement cost of the property, with a deductible of no greater than 1% of the property value. Insurance proceeds shall be available for repair and restoration of the Premises. Failure by Landlord to use such insurance proceeds to timely repair and restore the Premises shall constitute a material breach of this Lease. Such insurance shall, at Tenant's election, either be placed by Landlord, with invoices sent directly to Tenant, or placed by Tenant with Landlord shown as the named insured.

11

(b) <u>Tenant's Insurance</u>. Tenant, throughout the Term, shall, at its own expense, provide or cause to be provided and kept in force:

(i) commercial general liability insurance applicable to the Premises and its appurtenances providing, on an occurrence basis, a minimum combined single limit of $2,000,000;

(ii) all risk property insurance, including flood and earthquake, written at replacement cost value and with a replacement cost endorsement covering all of Tenant's trade fixtures, equipment, furniture and other personal property within the Premises ("<u>Tenant's Property</u>"); and

(iii) workers' compensation insurance as required by the state in which the Premises is located and in amounts as may be required by applicable statute.

The insurance required by Tenant hereunder may be achieved through the use of a blanket policy of insurance otherwise meeting the requirements of this Section (b).

(c) <u>Intentionally Omitted</u>.

(d) <u>Insurance Requirements</u>. All insurance policies required to be maintained by Landlord under this Lease shall be issued by insurance companies which have a Best's Rating of "A-VII" or better and which are qualified to do business in the State in which the Building is located.

(e) <u>Certificates</u>. Tenant shall deliver to Landlord on the Commencement Date of this Lease and thereafter prior to expiration of any insurance required to be carried hereunder, certificates of insurance evidencing this coverage with limits not less than those specified above. These certificates (with the exception of workers' compensation) shall list Landlord as an additional insured. Further, all certificates shall expressly provide that no less than thirty (30) days' prior written notice shall be given Landlord in the event of material change to, expiration or cancellation of the coverages or policies evidenced by the certificates.

(f) <u>Waiver of Subrogation</u>. Landlord and Tenant each hereby waive their rights of subrogation against one another to the extent covered by the property insurance policies required to be carried hereunder or actually carried by Landlord. Landlord shall cause its insurance carriers to consent to the foregoing waiver of rights of subrogation against Tenant.

20. <u>ENVIRONMENTAL MATTERS</u>.

(a) <u>Hazardous Materials</u>. Tenant shall not cause nor permit, nor allow any of Tenant's employees, agents, customers, visitors, invitees, licensees, contractors, assignees or subtenants to cause or permit, any Hazardous Materials to be brought upon, stored, manufactured, generated, blended, handled, recycled, treated, disposed or used on, under or about the Premises or the Building, except for routine office and janitorial supplies in usual and customary quantities stored, used and disposed of in accordance with all applicable Environmental Laws. As used herein, the term "<u>Hazardous Materials</u>" means any chemical, substance, material, controlled substance, object, condition, waste, living organism or

12

combination thereof, whether solid, semi solid, liquid or gaseous, which is or may be hazardous to human health or safety or to the environment due to its radioactivity, ignitability, corrosivity, reactivity, explosivity, toxicity, carcinogenicity, mutagenicity, phytotoxicity, infectiousness or other harmful or potentially harmful properties or effects, including, without limitation, molds, toxic levels of bacteria, tobacco smoke, petroleum and petroleum products, asbestos, radon, polychlorinated biphenyls (PCBs), refrigerants (including those substances defined in the Environmental Protection Agency's "Refrigerant Recycling Rule," as amended from time to time) and all of those chemicals, substances, materials, controlled substances, objects, conditions, wastes, living organisms or combinations thereof which are now or become in the future listed, defined or regulated in any manner by any Environmental Law based upon, directly or indirectly, such properties or effects. As used herein, the term "Environmental Laws" means any and all federal, state or local environmental, health and/or safety-related laws, regulations, standards, decisions of courts, ordinances, rules, codes, orders, decrees, directives, guidelines, permits or permit conditions, currently existing and as amended, enacted, issued or adopted in the future which are or become applicable to Tenant, the Premises or the Building.

(b) Landlord Indemnity. Landlord shall indemnify, protect, defend (by counsel acceptable to Tenant) and hold harmless Tenant from and against any and all claims, judgements, causes of action, damage, penalties, fines, taxes, costs, liabilities, losses and expenses arising at any time during or after the Term as a result (directly or indirectly) of or in connection with the presence of Hazardous Materials on, under or about the Premises or Building other than caused by Tenant. This indemnity shall include, without limitation, the cost of any required or necessary repair, cleanup or detoxification, and the preparation and implementation of any closure, monitoring or other required plans, as such action is required by local or state laws or any governmental agency. Landlord's obligations pursuant to the foregoing indemnity shall survive the expiration or termination of this Lease.

21. ESTOPPEL CERTIFICATES. Tenant shall, within thirty (30) days after written request of Landlord, execute, acknowledge and deliver to Landlord or its designee a written statement in the form of **Exhibit D** attached hereto (properly completed) but shall have no other obligation to deliver any other form of estoppel certificate. It is intended that any such statement delivered pursuant to this Section may be relied upon by a prospective purchaser of Landlord's interest or holder of any mortgage upon Landlord's interest in the Premises.

22. LIENS. Tenant shall keep its interest in this Lease and the Premises free from any liens arising out of any work performed or materials ordered or obligations incurred by Tenant. Landlord shall keep its interest in this Lease and the Premises free from any liens which would impair the interest of Tenant hereunder and hereby indemnifies and holds Tenant harmless from any liability or loss from any such lien. Landlord hereby waives any implied, common law, statutory lien or any other lien on any personal property at the Premises.

23. SUBORDINATION AND MORTGAGES

(a) Subordination and Non-Disturbance. Tenant agrees, at Landlord's option, to subordinate this Lease to the lien of any mortgages or trust deeds now or hereafter in force against the Building; provided, however, Tenant's obligation to subordinate this Lease is expressly conditioned upon Tenant receiving a written agreement in the form of **Exhibit E**

attached hereto and provided further that no such subordination shall affect any option to extend the Term of this Lease, right of first offer to lease additional premises, option to purchase or right of first offer to purchase the Building which may be included herein. Notwithstanding the foregoing, if the holder of any mortgage or deed of trust requires, any subordination agreement shall be on such lien holder's form and contain such modifications as are commercially reasonable.

(b)     Existing Mortgages and Deeds of Trust. Landlord shall use commercially reasonable efforts to cause the beneficiary under any existing deed of trust or mortgage affecting the Building shall provide a non-disturbance agreement to Tenant within thirty (30) days after the execution of this Lease in a form reasonably acceptable to Tenant.

24.    SURRENDER OF POSSESSION.   Subject to casualty, on or before the Termination Date, whether by lapse of time or otherwise, Tenant shall promptly and peacefully surrender the Premises to Landlord in a "broom-clean" condition and in the condition the Premises are in as of the date of this Lease, ordinary wear and tear and damage resulting from casualty, condemnation and other causes which Tenant is not responsible to repair pursuant to the Lease excepted. Landlord acknowledges that Tenant is not required to remove or restore the Premises with respect to any alterations, additions or improvements in the Premises, including, without limitation, any interior walls installed by Tenant in the Premises. Upon the expiration or early termination of the Lease, Tenant shall leave at the Premises the following furniture, fixtures and/or other property that is either transferred to Tenant by JPMC (the former occupant of the Premises) or otherwise left at the Premises by JPMC following the termination of its lease (the "Existing FF&E"): (i) the existing PBX telephone system with associated phones; (ii) the existing UPS system; and (iii) any and all furniture (including all chairs) cubicle partitions, desks and chairs) located within the Premises as of the date of this Lease. Tenant shall be entitled (but shall not be obligated) to remove from the Premises at its election (i) any furniture, fixtures and equipment other than the Existing FF&E and (ii) any other movable furniture, trade fixtures, equipment and personal property prior to the Termination Date, including, without limitation, any computers, security systems, televisions and monitors. Tenant further agrees not to cut any cables or cause any other disruption or disconnection to any existing equipment or other property contained in the Premises, except that Tenant may at its election disconnect and remove any cables necessary for the operation of any equipment or property removed from the Premises by Tenant. The Existing FF&E surrendered by Tenant with the Premises shall become the property of the Landlord without further action required by Tenant and subject to the following disclaimer:

NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN CONTAINED, THE CONVEYANCE OF THE EXISTING FF&E UNDER THIS ARTICLE 24 IS MADE BY TENANT TO LANDLORD ON AN "AS IS, WHERE IS" BASIS, AND "WITH ALL FAULTS," AND LANDLORD ACKNOWLEDGES THAT LANDLORD HAS AGREED TO ACCEPT SUCH FURNITURE, FIXTURES AND OTHER PERSONAL PROPERTY IN ITS PRESENT CONDITION AND THAT LANDLORD IS NOT RELYING ON ANY STATEMENTS OR REPRESENTATIONS MADE BY OR ON BEHALF OF TENANT. LANDLORD FURTHER ACKNOWLEDGES THAT TENTANT MAKES NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW, INCLUDING, BUT IN NO WAY LIMITED TO, ANY WARRANTY OF CONDITION,

14

MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OF SUCH FURNITURE, FIXTURES OR OTHER PERSONAL PROPERTY, OR WITH RESPECT TO THE ECONOMICAL, FUNCTIONAL, ENVIRONMENTAL OR PHYSICAL CONDITION OF SUCH FURNITURE, FIXTURES OR OTHER PERSONAL PROPERTY.

25. **QUIET ENJOYMENT.** So long as Tenant is not in default hereunder, Tenant shall have the right to the quiet and peaceful enjoyment and possession of the Premises during the Term of this Lease, subject to the terms and conditions of this Lease.

26. **HOLDOVER.** Any holding over after the expiration or earlier termination of the Term, with the consent of Landlord, shall be construed to be a tenancy from month to month, cancelable by either party upon thirty (30) days written notice, and upon terms and conditions as existed at the expiration or termination of the Term, except that the Basic Rent set forth in Section 1 shall be one hundred fifty percent (150%) of the Basic Rent in effect at the expiration or termination of the Term.

27. **LATE CHARGE.** Tenant hereby acknowledges that late payment by Tenant to Landlord of Basic Rent and other sums due hereunder will cause Landlord to incur costs not contemplated by this Lease, the exact amount of which will be extremely difficult to ascertain. Such costs include, but are not limited to, processing and accounting charges and late charges which may be imposed on Landlord by the terms of any mortgage or trust deed covering the Premises. Accordingly, if any installment of Basic Rent or any other sum due from Tenant shall not be received by Landlord or Landlord's designee within five (5) days after such amount shall be due, then, without any requirement for notice to Tenant, Tenant shall pay to Landlord a late charge equal to ten percent (10%) of such overdue amount. The parties hereby agree that such late charge represents a fair and reasonable estimate of the costs Landlord will incur by reason of late payment by Tenant. Any payment by Tenant shall first be applied to any and all outstanding late fees, and the balance to the Basic Rent and additional rent and any other payment due. Acceptance of such late charge by Landlord shall in no event constitute a waiver of Tenant's default with respect to such overdue amount, nor prevent Landlord from exercising any of the other rights and remedies granted hereunder. In the event that a late charge is payable hereunder, whether or not collected, for three (3) consecutive installments of rent then rent shall automatically become due and payable quarterly in advance, rather than monthly, notwithstanding any other provision of this Lease to the contrary.

28. **NO CONTINUOUS OPERATION.** Tenant shall not be required to continuously operate in the Premises. So long as the Tenant continues to pay rent, Tenant shall have the right to vacate the Premises at any time and such vacation shall not constitute a default.


29. <u>INTENTIONALLY OMITTED</u>.

30. <u>NON-COMPETE</u>. In the event Landlord or any affiliate of Landlord acquires property adjacent to the Premises, Landlord shall not use, or allow the use of, such property for the operation of a loan processing center or for other uses that would compete with Tenant's operations on the Premises. Tenant may enforce this covenant by any remedy available at law or equity.

31. <u>SIGNAGE</u>. Tenant shall be entitled to install on the Building or the Premises, at Tenant's expense, the maximum signage permitted by applicable laws and codes.

32. <u>GENERAL</u>.

(a) <u>Headings</u>. Titles to Sections of this Lease are not a part of this Lease and shall have no effect upon the construction or interpretation of any part hereof.

(b) <u>Successors and Assigns</u>. All of the covenants, agreements, terms and conditions contained in this Lease shall inure to and be binding upon the Landlord and Tenant and their respective successors and assigns.

(c) <u>Brokers</u>. Tenant warrants that it has had no dealings with any broker or agent in connection with this Lease. Tenant indemnifies Landlord against and holds Landlord free and harmless from all claims, expenses, fees and commissions, including attorneys' fees, arising out of or resulting from any dealings between Tenant and any broker or finder. Landlord warrants that it has had no dealings with any broker or agent in connection with this Lease. Landlord indemnifies Tenant against and holds Tenant free and harmless from all claims, expenses, fees and commissions, including attorneys' fees, arising out of or resulting from any dealings between Landlord and any broker or finder.

(d) <u>Entire Agreement</u>. This Lease is the final and complete expression of Landlord and Tenant relating in any manner to the leasing, use and occupancy of the Premises, to Tenant's use of the Building and other matters set forth in this Lease. No prior agreements or understanding pertaining to the same shall be valid or of any force or effect and the covenants and agreements of this Lease shall not be altered, modified or added to except in writing signed by both Landlord and Tenant.

(e) <u>Severability</u>. Any provision of this Lease which shall prove to be invalid, void or illegal shall in no way affect, impair or invalidate any other provision hereof and the remaining provisions hereof shall nevertheless remain in full force and effect.

(f) <u>Notices</u>. All notices and communications to any party hereunder shall be in writing and shall be deemed properly given if delivered personally, sent by registered or certified mail, postage prepaid, or by a recognized overnight commercial messenger providing proof of delivery, facsimile (electronically confirmed) to Landlord's Address for Notice and Tenant's Address for Notice as set forth in Section 1 hereof. Any notice so given shall be deemed to have been given as of the date of delivery (whether accepted or refused) established by U.S. Post Office return receipt or the overnight carrier's proof of delivery, as the case may be.

Any such notice not so given shall be deemed given upon receipt of the same by the party to whom the same is to be given.

(g) <u>Governing Law and Forum</u>. This Lease shall be governed by and construed in accordance with the internal laws of the State of Florida. Any litigation with respect to this Lease shall be conducted in the County of Brevard, State of Florida.

(h) <u>Waivers</u>. No waiver by Landlord or Tenant of any provision hereof shall be deemed a waiver of any other provision hereof or of any subsequent breach by Landlord or Tenant of the same or any other provision. Landlord's or Tenant's consent to or approval of any act shall not be deemed to render unnecessary the obtaining of Landlord's or Tenant's consent to or approval of any subsequent act by Landlord or Tenant.

(i) <u>Time of Essence</u>. Time is of the essence for the performance of all of the obligations specified hereunder.

(j) <u>Consent</u>. Whenever any consent is required by Landlord or Tenant hereunder, such consent shall not be unreasonably withheld, conditioned or delayed and shall be deemed granted if not refused within thirty (30) days after written request is made therefore, together with all necessary information.

(k) <u>Attorneys' Fees</u>. If either party institutes a suit against the other for violation of or to enforce any covenant or condition of this Lease, or if either party intervenes in any suit in which the other is a party to enforce or protect its interest or rights, the prevailing party shall be entitled to all of its costs and expenses, including, without limitation, reasonable attorneys' fees.

(l) <u>Recording</u>. Neither Landlord nor Tenant shall not record this Lease or a memorandum hereof without the prior written consent of the other party hereto, which consent may be withheld in such party's sole discretion, unless required by law, and such recordation shall, at the option of the non-recording party, constitute a non-curable default of the recording party hereunder.

(m) <u>Confidentiality</u>. Except as otherwise provided herein, Landlord shall hold as confidential all the terms of this Lease and shall not release any such information to third parties without Tenant's prior written consent, except pursuant to a court order requiring such release, as otherwise may be required by law, or as may be necessary to carry out the terms of the Lease.

<center>[Signature page follows.]</center>

IN WITNESS WHEREOF this Lease has been executed the day and year first above set forth.

LANDLORD:

Witness #1: _____

Witness #2: _____

B.H. Melbourne Delaware, LLC, a Delaware limited liability company

By: _____
Name: ARSALAN COZINI
Its: MEMBER

Dated: FEB. 11, 2013

TENANT:

Witness #1: _____

Witness #2: _____

WINGSPAN PORTFOLIO ADVISORS, LLC, a Texas limited liability company

By: _____
Name: _____
Its: _____

Dated: 2-6, 2013

*(Note: In Florida, two witness signatures are required for every signatory.)*

18